Case number 14-5185 Shana Perry et al. v. Autozone Stores Inc. Arguments not to exceed 15 minutes per side. Ms. Goldberg for the appellant. Good morning, your honors. Good morning. If I may, I would like to reserve two minutes for rebuttal. All right. May it please the court, my name is Christine Goldberg, and I represent the appellant and the defendant in this matter, AutoZoners, LLC. This lawsuit was brought by Ms. Shana Perry against her former employer, AutoZone, alleging that she was sexually harassed by an AutoZone store manager by the name of Mark Dahan. And she also alleges that she was subsequently retaliated against after she filed her complaint of sexual harassment against Mr. Dahan. She is joined in this lawsuit by two of her former co-workers, Daryl Quinney and Damon Harper, who allege that they were terminated in retaliation for supporting Ms. Perry's claims in the course of the investigation of her sexual harassment complaint against Mark Dahan. This case was tried to a jury in the Western District of Kentucky, and the jury returned a verdict in favor of Ms. Perry on her claim of sexual harassment and retaliation, and in favor of Mr. Quinney and Mr. Harper on their claims of retaliatory termination. AutoZone filed post-trial motions which were largely denied by the trial court, so we now ask this court to reverse the jury verdicts in this case. As the court is well aware, AutoZone has raised numerous points in its appellate brief, but I hope in my time this morning with you that I can address three of those. The first, AutoZone asks this court to set aside the jury verdict and grant AutoZone's judgment as a matter of law with respect to Ms. Perry's sexual harassment claim, based on the application of the Farragher-Ellis doctrine in this case. Second, AutoZone asks this court to set aside the jury verdict and grant AutoZone's judgment as a matter of law with respect to Ms. Perry's claim of retaliatory harassment, because the evidence of record, even viewed in a light most favorable to Ms. Perry, does not satisfy the criteria set forth by the Supreme Court in University of Texas Southwest Medical Center v. Nassar that requires but-for causation with respect to a claim of retaliation. And similarly, on our third point, AutoZone asks this court to set aside the jury verdict. What specifically, counsel, do you say was lacking? With respect to the retaliatory harassment claim with respect to Ms. Perry? Yes. Particularly, we claim that Ms. Perry has not established the necessary but-for causation. You said that. That's right. I'd like you to explain that. Sure, Your Honor. Two points. First is, but-for causation means that but for the fact that she engaged in a protected conduct, she would not have been subjected to the alleged retaliatory harassment. And here the evidence showed her allegations of harassment were that her supervisor asked her to do an action plan, that he spoke to her like a child, that he called the store numerous times during the day to check up on her, and all of that activity. And it struck her as surprising, and she associated it with her having filed a claim. That's right. And what's so peculiar about her thinking on that level? That conduct by Mr. Helster and her district manager was designed because she was underperforming. And she admitted she was underperforming. And that underperformance had been noted prior to her complaint of sexual harassment. So that conduct began before the complaint. And there was testimony at trial about that, and she admits she was an underperformer. And the other part of that, too- Did it begin before the complaint, but did it also begin before the alleged mistreatment or the harassment? I mean, how do we figure all that out? Presumably the jury would have been the ones to untangle all that and figure that out. Well, there are several points that I think are relevant. First is we presented evidence at trial, and the jury heard evidence about Mr. Helstron's conduct before the harassment, and before her complaint, and after her complaint. And we had the store manager who was in place before the alleged harasser, who worked under Donnie Helstron, tell the jury about what Mr. Helstron's conduct was like then, before the harassment and before the complaint. And he talked about how Mr. Helstron called the store hundreds of times a day, and he himself didn't like the tone of voice that Mr. Helstron used towards him. And then we had the store manager who took the place of the alleged harasser, so post-complaint. The jury did reject this. They did. They did. And so, in as much as they did, the path by which you expect this court to overturn that is, as a matter of law, what? That the jury's finding, when you view that evidence, is reasonable minds could only— Against an manifest way. Well, it's reasonable minds could reach one conclusion, and we think the evidence is overwhelmingly that reasonable minds could reach but one conclusion, and that is that she was not harassed, that there was not but for causation. Because clearly there was causation other than the complaint. Clearly there was causation in that the evidence showed she was underperforming. So there wasn't a sole cause. But she had been underperforming, admittedly underperforming, and then it's unreasonable for the jury to take her word that the increased focus on her work by this manager was out of line. Well, Your Honor, we think the evidence showed the behavior was consistent and that her view of that was not objectively reasonable. And there was a lot of evidence on that point, Your Honors, which was why we felt like the verdict was against the weight of the evidence. And so we asked the court to look at that evidence and review it to show, again, remember, harassment is not only subjective but objective. And so from a reasonable perspective, with all the evidence that we presented, you know, it might be one thing if we had her testimony and we had only Mr. Hellstrom's testimony, but we had others who could relate to the jury their observations of his conduct both before the complaint and harassment and after. And we thought that was credible. And evidence that showed that objectively the conduct that she was subjected to was not any different than what others were subjected to or that she had been experiencing prior to her complaint. And, again, we focus on the but for causation, meaning that the sole reason that she was subjected to that scrutiny would be her complaint. So we've spent a little bit of time here on the retaliation. Should we, I'd like to move you back to her sexual harassment claim. Absolutely, Your Honor. So the points that I wanted to address there, again, have to do with the application of the Ferger-Ellis Doctrine, which I think in this case is an interesting application. Obviously, in brief, we argued that we didn't think that the evidence that Ms. Perry presented at trial was sufficient to establish a hostile work environment in the first place. But the Court need not really even reach that conclusion because we think the application of the Ferger-Ellis Doctrine clearly here prevents liability for AutoZone in this case. And the Court is well aware of the steps that are necessary to establish the Ferger-Ellis Doctrine. The first being that the employer must show that it exercised reasonable care to prevent harassment in the workplace and that it promptly addressed it when it did occur. And on this point, there was ad nauseum evidence at trial about AutoZone's harassment policy. In fact, I think the jury probably could have recited it to us as much as we had talked about the harassment policy. So certainly, there was evidence that AutoZone had a harassment policy in place during her employment. She knew it existed. She had training on it. There was testimony at trial about the training on AutoZone's harassment policy. There was testimony by every employee that they understood they had an obligation to report harassment. And every witness testified that they understood that there were numerous avenues for reporting. So it wasn't a single avenue. There were a number of avenues, including a 1-800 number. Is it legally pertinent that the time span here was so short? It's just a matter of weeks. I mean, I hear you about the defense, but it was just a short amount of time. Maybe she didn't yet get around to reporting it. What was the employer's requirement with respect to reporting? It was only a few weeks, and she maybe hadn't yet reported. Right. And, well, certainly that is what happened. So it was three weeks from the first incident to the time she reported. And the policy clearly says that the conduct violations of the policy should be reported immediately. And that's said in numerous ways. Well, there was one incident, and then there was a stretch of time when there were no more incidents. That's correct. Wait just a minute. I'm sorry, Your Honor. It seems reasonable to me that something happens and it hadn't happened before, and it doesn't happen again for a while. You hope after what you've said in response to the incident that it's going to stop. And then when it started up again a couple weeks later, it really started back up with a vengeance. Did it not? That was her testimony, Your Honor. Good. And so at that point she should have reported, right? If you're not going to report the first time because you want to hope that you resolved it yourself, then when it has not resolved you should then report it because it's serious. It's very serious conduct. And that first incident was very serious conduct, and she testified it was serious conduct. And that being the case, if you find that what she was subjected to was of a serious nature. Help me with what happened. So it started back up again, and ultimately she did report it, and they ran an investigation, and he admitted that it had happened. Is that where we are? Yes, Your Honor, that's correct. Now she took from the time it started back up again, which would have been around the first week of July, she then reported it to Human Resources on July 26th. Or if you credit her testimony, July 23rd, a difference of maybe three days there. So there was a period of approximately three weeks where there was no reporting, and she admits that. And her testimony is that she was trying to resolve it herself. But that isn't what AutoZone policy requires. It requires that you report a serious violation. And so the issue that this raises is... Does the complete defense remind me that the defense is, if it's invoked and the courts abide by it, it's a complete defense, everything that happens in the two weeks that she didn't report it, or three weeks. What's the effect of that? It's a bar to liability. It's an affirmative defense. That's correct. So in this case, Your Honors, there's, and you've pointed out exactly the issues. It's the delay. It's the delay in reporting. It's the delay. Three-week delay. I'm sorry. You did report. The delay would be about... It's a complete bar. It's an affirmative defense. That's correct, Your Honors. Now, we pointed to, Your Honors, to several cases where the courts found that both parties exercised reasonably. So let's say the court reaches that conclusion, that it was not unreasonable for her to wait a couple of weeks to see how it resolved. But in this case, the evidence shows that once she reported, there was an immediate investigation, and he was terminated within 10 days, 11 days. So in that case, you've got a situation then where you have the employee acting reasonably and reporting, and you've got the employer responding reasonably and investigating and ending the harassment. And in those cases, we cited to the court to several cases where the courts have said, in that circumstance, you can't find the employer liable because both parties did what they were supposed to do, and both parties satisfied their obligation under Title VII. And so there have been courts that have said, we're not going to impose liability on the employer. Everybody does what they're supposed to do under Title VII. And if you look, Your Honors, even the Sixth Circuit, in a similar case, while not talking about it in the terms that we just did, absolutely applied the fair case where, a defense where a plaintiff didn't report an incident after only a couple of days, and there said, hey, a couple of days is unreasonable, employer's not liable. But we did rely heavily on the Indes versus Freeman case, which comes out of the Fifth Circuit, which has a great analysis about why in a case like this, when both parties do what they're supposed to do, then Title VII is satisfied. And in that case, you can't impose liability on the employer because that would be contrary to the purpose of Title VII. Your Honors, I believe I'm out of time, so I will turn the podium over to opposing counsel. Thank you for your questions. Hi, I'm Rae Ann Faulkner, and I represent Shawna Perry, Damon Harper, and Darrell Quinney in this action. And I just want to jump right into what we were just talking about, and that would be the Fairgroth-Ellerth defense. And AutoZone's request that this court basically not follow the standard that has been set by the U.S. Supreme Court. The U.S. Supreme Court was clear that the Fairgroth-Ellerth defense is a two-pronged analysis. One is that the employer has to show that they took reasonable measures to correct and protect against the harasser. And the second prong is that they have to show that a person like Shawna Perry was acting unreasonably and not availing herself of methods by which to stop the harassment. It is an and. You didn't say that she was acting reasonably in waiting for three weeks. How do you play that out? She plays it out like this. She had worked for AutoZone for 12 years. She had never made a complaint before. She was a manager in that store. AutoZone brings in a brand-new store manager. He didn't even finish his training before they brought him in. He shows up one day, and she tries to deal with who they brought in. She always handled things on her own. She was a single mother. She had raised her children by working at AutoZone, and all of a sudden there's this person that's saying things that are just completely inappropriate. She tells him to stop. She tells him to leave her alone. She does those things thinking that anybody that AutoZone would have brought in would understand that they need not harass me this way. And what happened was that she was written up. She was disciplined. She was put on a performance improvement plan. On July 13th, she was threatened with demotion by this new store manager who had been there less, I think, maybe two weeks at that time. And she associated all of her pleading for him to stop, to leave her alone, as he's saying, yeah, you comply with my sexual advances or you're going to lose your job. So here's a single mother, 12 years at AutoZone. She fears. So Ms. Goldberg tells us that everybody understood and that your client understood her options and the fact that you smirk. She didn't? Well, I don't mean to smirk, but the idea that a policy that supposedly was given to her in 1997 and 2010 that she understood, she said that there was never any training on it, in-person training. Not only did she say that, but Daryl Quinney said that. Damon Harper said that. And then on top of that, AutoZone claims that there is some type of immediate reporting requirement. When the testimony at trial was very clear that managers have discretion to report, there is nowhere in the policy that says that a person that's being harassed has to immediately report. And even if it did, the standard is not AutoZone's policy. The standard is the law. And a failure to avail is not standard that is part of the Farraguth-Ellerth defense. It is not meant to punish a delay, a reasonable delay. It was a three-week period of time, maybe, and the harassment was severe. In the middle of that period of time, that three weeks, she is disciplined by this man. She's scared. There's plenty of case law on point where a six-week delay is not unreasonable. But it is, I take it, undisputed that as soon as she piped up, the company jumped to attention and eventually fired the fellow. Well, and I disagree with that. So throughout the trial, Ms. Perry clearly reported the sexual harassment on July 23rd. AutoZone refuses to admit that. Well, they didn't seem to admit three days later. Is there a significant difference? Well, it's significant to me because their very policy says that, or they claim that they have a policy that says that zero tolerance, they have zero tolerance for sexual harassment. But they leave the harasser, the person who they just brought in, who they should have no affinity to, they leave him at that store. Their policy says, hey, we're not going to put up with harassment. We're not going to allow someone that harasses to stay around. I'm just trying to get the facts correct because we are told by Ms. Goldberg that this was very close to immediate, even if you disagree with which day she tells us. The 23rd through I think the first time that they even talked to Mark DeHaan was August 4th, and they leave him in that position. So in my mind, that's not immediate. I don't think that in anybody's reasonable mind that from July 23rd to August 4th would be an immediate action by AutoZone. I think that they fell. Is it two weeks? Yes. I don't have a calendar. It's about two weeks. They fire him 14 days later, so that's two weeks. And I do not believe that that's immediate based on the allegations that she's making about this man. It's pretty swift in a corporate structure, is it not? I don't know. I think it is kind of swift. Well, the jury heard it, and the jury did not believe that it was swift enough. And I think that that is what we have to look here. A jury heard all of this evidence. They heard every single bit of testimony from witnesses. They reviewed documents. And that jury reasonably decided that AutoZone did not meet its burden, that that affirmative defense did not protect them from the sexual harassment that was perpetrated against Shawna Perry. The other issue that Ms. Goldberg discussed on behalf of AutoZone was the but for causation under the retaliatory harassment scheme. And Ms. Goldberg was clear that witnesses testified that Hellstern always called and was abusive to his employees. But Shawna Perry said he did not one time call and talk to her prior to her complaint. Not one time. He basically ignored her. The time that she complained, he started calling her almost immediately, three, four times a day. He decides that she needs to be written up for her complaint. He gives her a disciplinary. Was he under her jurisdiction previously? Yes, he was. I'm not heard somehow. Yes, she had been under his supervision for years and years. I think since at least January of that year, of 2000. So not years and years, months. Well, it's at that point. I don't know. It's like nine months, I think, at that point. And he didn't call her. He didn't harass her about anything. The store, the commercial store itself, which she was in charge of, had been underperforming for a very long time. It is in a very urban area of Louisville, not a lot of commercial things around that section of town. And this was not anything new to AutoZone. The underperforming of that commercial department was nothing new. You're talking about the underperforming store, and Ms. Goldberg is talking about an underperforming plaintiff. Well, she was the commercial department. She was the only person within. Was the underperformance regarding the production of the store? Yes, just in the commercial department. And she was the commercial department. She was the commercial department manager. Are we talking about sales? What are we talking about? Yes, commercial. Let's say that an auto body shop would call into AutoZone and order parts for repairing of cars, and there just weren't a lot of those type of shops around that particular AutoZone store. And she couldn't go out and get the commercial department from going to and robbing other AutoZone stores of their commercial department. And the fact of that is that nothing changed. Nothing changed between the performance of that commercial department before and after the complaint. It was always that way. And Shauna Perry testified, and the jury had the right to believe her, that he did not call me. He did not harass me. And that's important. And the jury had the right to believe that. It was very credible testimony. The people that testified that he called and talked to them was her complaint. The complaint to whom? The complaint. To him? No. The complaint was made to an individual by the name of Don Brandenburg, who was the human resource manager. So how do we associate it then with his beginning to call her? Was he told? He knew. He knew about it. Did the jury know this somehow? The jury knew this. There was an email from Hellstern to Don Brandenburg about the sexual harassment complaint. And Hellstern is given information about how to terminate DeHaan, how to terminate my clients, Quinney and Harper. And he responds back, well, what if any for Shauna? Why not Shauna? So it says directly, what if any for Shauna? And Hellstern tried throughout the trial to say, I didn't know there was a sexual harassment complaint. And the jury did not like the fact that he lied about that. There was an email that showed that he knew. And then all of this harassment starts. And the people that testified, Tim Headley, he was a store manager. He was not a commercial department manager. He testified that Hellstern would call him. There was also an individual by the name of Jacob Blenbach, who was also a store manager. He said that Hellstern would call him. But there was not another commercial manager brought in. Why do you find that key? Well, I find it key because I'm probably more in, I know a lot about the case. And I can remember that Tim Headley said to me in a deposition that, yeah, Hellstern never talked to anybody but store managers. Anybody but store managers? Yeah, so he didn't. I'm sorry. I'm soft-spoken. So Tim Headley says Hellstern never talks to anybody but store managers. And Shawna Perry was not a store manager. There was a store manager level. There was assistant store manager. There was commercial manager and a parts sales manager. And basically, Headley said he never went down that chain. It stopped with the store manager. And he was there before the complaint took place. So he wasn't even around to know how Shawna Perry was treated by Hellstern after the fact. Are you going to address your other clients? I would love to. Damon Harper, Daryl Quinney were terminated for participating in the investigation and basically giving credence to Shawna Perry's complaint of sexual harassment. AutoZone claims that they were terminated for a failure to report inappropriate behaviors. However, there is no policy of AutoZone that says that you can be terminated for failing to report inappropriate behaviors or that you have to report inappropriate behaviors. When Ms. Goldberg stands back up here and we say, I thought you said there was a policy. She's going to say there was a policy. And why can you say there isn't and she says there is? There is a policy that says that managers and supervisors have discretion. They have discretion to look at complaints or concerns and decide whether or not those are serious enough to be reported. And the testimony was very clear throughout the trial or the case that this policy gave discretion to people like my clients, Daryl Quinney, Damon Harper, who were managers, to use their discretion whether or not something needed to be reported. I know your light's on. I'm sorry. Can I ask the last part of this question, if I may? Yes. Sure. Maybe you can't have it both ways, that this was horrible harassment that these gentlemen observed, yet they did a fine job in exercising their discretion. Well, they didn't see very much. They each saw like two or three things that they said was inappropriate. It wasn't until Don Brandenburg brought them in and talked to them that made them believe that it was something more when they got the whole story. And, in fact, Sean and Perry. All right. I think you've answered. I'm sorry. Okay. Thank you. Thank you. Your Honors, if I may, in my last few minutes, I can pick up on that last issue with respect to the claims of Mr. Harper and Mr. Quinney, as I did not have an opportunity to address those initially. Your Honor, you are correct. There is a policy that requires these individuals to report, and that policy is the harassment policy. And it specifically says. Now, you know, everything's a little different when we hear from your opponent. This was an ironclad bow shout, and she disagrees with you. And so I guess our interest is what the jury heard. Right. They heard two sides. They did. Did they not? And the policy was in front of them throughout the trial, and it clearly says an auto zoner has an obligation to report. A policy that is in place and no one talks about for years at a time is a different story, is it not? Sure. But, Your Honor, that's not the evidence that was presented at the trial. That's what we're looking for. Right. Your Honor, even in Ms. Perry's case, where she says she didn't know about the policy and wasn't trained on it, there were documents in her file that said she had training, that she signed. You know, I can understand a zero-tolerance policy against a harasser, but this was apparently a zero-tolerance policy against the person being harassed and anybody who supported what she had to say. I mean, you would think, under normal circumstances, if there was a duty on these coworkers to report, that they would be disciplined somehow, that something would go into their file, but to fire them for failing to report what somebody had done to a coworker and not to them? I mean, that seems a little bit out of the— I mean, the jury must have thought that was pretty harsh, Ms. Goldberg. Well, clearly they did, but, Your Honor, AutoZone didn't fire everybody that participated. Grover Jones was an employee who participated and supported her claims, and they didn't fire him. Well, what reason did they give for firing the two coworkers? They were managers, and they should have known better, and they both testified that what they saw— All right, so you demote them, you suspend them without pay for a week, but you fire them for not— The evidence at trial from the AutoZone witnesses was that AutoZone does not tolerate a failure to report harassment. That is how serious it takes this policy, and rightly so, because of the exposure that it creates for them when people don't report. You've answered my question. Thank you, Your Honor. Thank you for your time today, Your Honors. I appreciate it. Thank you very much, and the case is submitted. When you're ready, you can call the next case.